UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD A. GORDON, JR., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | No.  2:21-cv-00960 AC <br><br><br> **ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

I.  PROCEDURAL BACKGROUND

Plaintiff first applied for DIB on June 21, 2010, alleging disability beginning June 29, 2008, due to bulging disc in the back and neck, fibromyalgia, and arthritis.  Administrative

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

1

Record (AR) 354, 916, 999).[2]  Plaintiff's date last insured was March 31, 2015.  AR 355.  The Commissioner denied the application initially, on reconsideration, and after an April 2012 hearing before Administrative Law Judge (ALJ) Sherrill Carvalho.  AR 474-522 (hearing transcript), 547-59 (ALJ decision), 640, 645.  The decision was remanded by the Appeals Counsel and additional information was submitted; ALJ Sharon L. Madsen held a hearing on remand and issued an unfavorable decision dated October 22, 2014.  AR 450-73 (hearing), 572-87 (decision).  The Appeals Council again reviewed the decision to direct an ALJ to consider new evidence submitted to the Appeals Council, clarify the ALJ's findings regarding plaintiff's social functioning, consider a treating source opinion, reconsider whether plaintiff's reaching ability conflicted with the step four job, and ensure the claim file contained both electronic and paper records accumulated during the pendency of the claims (AR 598- 99).

ALJ Madsen held another hearing and issued a new unfavorable decision dated December6, 2017 (AR 387-421 (hearing), 605-21 (decision)).  The Appeals Council reviewed the decision and determined that it was issued based on the electronic record, which is not the certified record, noting that the official certified paper record could not be located and therefore needed to be reconstructed.  AR 635.  The Appeals Council directed plaintiff have an opportunity for a new hearing and decision, and to submit any available medical evidence.  AR 636.  ALJ Scot Septer held a hearing on March 5, 2019, and issued a partially unfavorable decision on August 21, 2019. AR 353-73 (decision), 3215-59 (supplemental record).  The Appeals Counsel denied a request for review on March 26, 2021, making the ALJ Septer's August 2019 decision final.  AR 1-6.

Plaintiff filed this action on May 27, 2021.  ECF No. 1; see 42 U.S.C. § 405(g).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 5, 7.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 11 (plaintiff's summary judgment motion), 13 (Commissioner's summary judgment motion), 14 (plaintiff's reply).

---

[2] The AR is located at ECF No. 10-1 through 10-11 (AR 1-3259).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1960, and accordingly was, at age 48, a younger person under the regulations, at the disability onset date.[3] AR 390. Plaintiff graduated high school and can communicate in English. AR 392, 412, 488. Plaintiff has prior work experience as a telephone solicitor, material handler/industrial truck operator, a car auction driver/automobile locator/auction assistant, and as a construction worker II. AR 3254.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of

---

[3] See 20 C.F.R. § 404.1563(c) ("younger person").

which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . . .'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

>Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

>Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

>Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

>1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.
>
>2. [Step 1] The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*).
>
>3. [Step 2] Since the alleged onset date of disability, June 29, 2008, the claimant has had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, degenerative joint disease of the bilateral shoulders and hips, diabetes mellitus, and depression (20 CFR 404.1520(c)).
>
>4. [Step 3] Since June 28, 2008, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
>5. [Residual Functional Capacity ("RFC")] After careful

consideration of the entire record, the undersigned finds that since June 29, 2008 the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can occasionally climb ladders, ropes, scaffolds, ramps and stairs, and is able to frequently balance.  The claimant is able to occasionally stoop and kneel, and is never able to crouch or crawl. The claimant is able to reach overhead and forcefully handle, bilaterally, on an occasional basis, and should not work in environments subjecting them to concentrated levels of cold or warm temperatures, or dampness.  The claimant is capable of performing jobs of a non-complex nature requiring the performance of no more than simple, routine tasks.

6. [Step 4] Since June 29, 2008, the claimant has been unable to perform any past relevant work (20 CFR 404.1565).

7. [Step 5] Prior to the established disability onset date, the claimant was an individual closely approaching advanced age.  Applying the age categories non-mechanically, and considering the additional adversities in this case, on March 31, 2015, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. [Step 5, continued] Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled and semi-skilled with no transferable skills (20 CFR 404.1568).

10. [Step 5, continued] Prior to March 31, 2015, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. (20 CFR 404.1569 and 404.1569a.)

11. [Step 5, continued]  Beginning on March 31, 2015, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c) and 404.1566).

12.  The claimant was not disabled prior to March 31, 2015, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

AR 357-73.  As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act from June 29, 2008 (the alleged onset date) through March 31, 2015 (the date plaintiff changed age categories).  AR 357, 373.

VI. ANALYSIS

Plaintiff argues that the ALJ erred in three ways: (1) by failing to properly weigh the medical opinions, (2) by failing to properly evaluate plaintiff's testimony, and (3) by relying on a flawed question to the vocational expert. ECF No. 12. Plaintiff seeks an immediate award of benefits or, alternatively, remand for a new hearing by an ALJ. Id. at 29.

A. The ALJ Properly Weighed the Medical Opinions

Plaintiff argues that the ALJ erred by giving "little weight" to the opinions of the treating mental health sources, Dr. Collado and Mr. Pippin. ECF No. 12 at 16, AR 367. The ALJ found these opinions were based on plaintiff's subjective statements rather than appropriate medical findings, and that they conflicted with plaintiff's history of conservative and effective treatment. Id. Plaintiff contends that the ALJ erred by favoring opinions from one-time examining psychologists Drs. Dixit and Stafford over those of his treating providers. ECF No. 12 at 16, AR 367, 370.

1. The Relevant Medical Evidence and Opinions

    a. Russell Pippin, M.F.T., Treating Psychotherapist (Non-Medical Source)[4]

On February 8, 2010, Russell Pippin, M.F.T., evaluated plaintiff to establish a treatment relationship for defendant's depression. AR 1241. Plaintiff endorsed symptoms of daily sadness, sleep disturbance with nightmares, difficulty concentrating, fatigue, weight loss, loss of interests, feelings of worthlessness, memory loss, auditory and visual hallucinations, and a history of physical and sexual abuse as a child. Id. Plaintiff reported a history of childhood trauma including sexual abuse at the hands of a football coach. Id. Plaintiff reported that in 2006 he was briefly hospitalized on a 5150 "danger to self" classification. Id. A mental status examination

---

[4] For applications like this one filed before March 27, 2017, the ALJ may reject statements from sources who are not "acceptable medical sources" by giving reasons germane to that source, which is a lower standard than that required for acceptable medical sources. Britton v. Colvin, 787 F.3d 1011, 1013 (9th Cir. 2015) (per curiam). Non-acceptable medical sources include licensed therapists like Mr. Pippin. 20 C.F.R. § 404.1502(a), (d) (distinguishing between acceptable medical source and medical source). Statements by a non-acceptable medical source cannot constitute medical opinions, which is a term of art reserved for judgments from an acceptable medical source. 20 C.F.R. § 404.1527(a)(1).

revealed a depressed mood, auditory and visual hallucinations, impaired memory, and slowed speech. AR 1242. Mr. Pippin diagnosed major depressive disorder, recurrent, with psychotic features. AR 1244. In a letter dated November 27, 2012, Mr. Pippin reported that plaintiff had been treated for major depressive disorder, recurrent, with psychotic features for over two years. AR 1687. His GAF score was 43, and had been as low as 40 in the past. Id. Clinical findings included poor memory, poor appetite, sleep disturbance, mood disturbance, hallucinations, loss of interests, difficulty thinking and concentrating, isolation, decreased energy, and intrusive recollections of traumatic experiences. Id. Mr. Gordon was prescribed Bupropion. Id.

On January 25, 2013, plaintiff was seen by Mr. Pippin for a clinical assessment. AR 1783. His symptoms included daily sadness, sleep disturbance, difficulty concentrating, low self-esteem, loss of interests, and auditory hallucinations. Id. A mental status examination revealed anxious behavior, and an anxious and depressed mood with congruent affect. AR 1788-1789. Mr. Pippin completed a second Psychiatric/Psychological Impairment Questionnaire dated January 25, 2013. AR 1698-1705.[5] Plaintiff was diagnosed with major depression, severe, with psychotic features, and his current GAF score was 51. AR 1698. Clinical findings supporting the diagnosis and assessment were unchanged from the prior report except for also noting evidence of suicidal ideation or attempts and hostility and irritability. AR 1699. Plaintiff's primary and most frequent and/or severe symptoms were essentially unchanged from Mr. Pippin's previous report. AR 1700.

      b. Orlando Collado, M.D., Treating Physician

Dr. Orlando Collado evaluated plaintiff on March 19, 2010. AR 1310. Plaintiff reported being depressed, dealing with a lot of stressors, and seeing things in his bedroom at night. Dr. Collado prescribed Cymbalta. Id. At a follow up with Dr. Collado on April 16, 2010, plaintiff stated he felt less depressed. AR 1302. Cymbalta was continued. Id. Dr. Collado refilled Cymbalta on June 11, 2010. AR 1288. On August 11, 2010, plaintiff stated that his

---

[5] This report was addressed to "Dr. Bryan Harrison" [sic.] (AR 1698) but was filled out and signed by Mr. Pippin, with a notation that "Dr. Harrelson did not feel as though he knew the client well enough to fill this out." AR 1705.

medications helped with his depression and pain. AR 1274. At a visit with Dr. Collado on November 2, 2010, plaintiff continued to have symptoms of depression with auditory and visual hallucinations. AR 1427. He was continued on Cymbalta. AR 1421. On January 25, 2011, Dr. Collado substituted Effexor for Cymbalta. AR 1606. Despite this change, on March 11, 2011, plaintiff reported symptoms of increased depression and extreme fatigue. Id. Dr. Collado restarted Cymbalta. AR 1609.

On March 14, 2011, counsel at Binder & Binder LLC submitted a letter to the Department of Social Services attaching a Multiple Impairment Questionnaire, indicating that the document was "from Russel Pippin LMFT co-signed by dr. collado [sic.] MCBH dated 10/5/2010." AR 1339. The document is signed by Russell Pippin and there is no indication on the face of the document itself that it was co-signed by Dr. Collado. AR 1339-1348. Nonetheless, the ALJ attributed the opinion to Dr. Collado as well as Mr. Pippin. AR 367.

The questionnaire states that plaintiff is "markedly limited" in his ability to (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (3) sustain ordinary routine without supervision; (4) work in coordination with or near others without being distracted by them; (5) make simple work related decisions; and (6) complete a normal workday without interruptions from psychological symptoms and perform at a consistent pace without rest periods of unreasonable length or frequency. Plaintiff was found to be "moderately limited" in (1) the ability to remember locations and work-like procedures; (2) understand and remember one or two step instructions; (3) carry out detailed instructions; (4) the ability to accept and respond appropriately to criticism from supervisors; (5) the ability to interact appropriately with the general public; (6) get along with workers or peers without distracting them or exhibiting behavioral extremes; and (7) the ability to be aware of normal hazards and take appropriate precautions; (8) the ability to travel to unfamiliar places or use public transportation; and (9) set realistic goals and make plans independently. AR 1342-1345.

On December 7, 2012, plaintiff was admitted to Marie Green Psychiatric Center following a suicide attempt with diagnosis of major depressive disorder, recurrent, severe, without psychotic

features. AR 1691, 1693. He attempted to overdose on medication because of chronic pain, depression, and multiple stressors. AR 1691. He indicated at admission that he had missed his Cymbalta dose the day prior. AR 1692. Plaintiff described symptoms of sad mood, poor appetite, poor sleep, lack of motivation, and feelings of hopelessness and helplessness. Id. A mental status examination revealed a depressed mood and congruent affect and thoughts focused on stressors. AR 1693. Plaintiff was treated with Cymbalta in addition to individual and group therapy, and was discharged on December 9, 2012. Id. Discharge notes indicated plaintiff "did not meet medical necessity criteria for further inpatient level of care" and that he was clinically stable; plaintiff denied psychotic symptoms and had a normal mental status exam. AR 1693.

      c. Aparna Dixit, Psy.D., SSA Consultative Psychologist

On August 29, 2010, Dr. Aparna Dixit evaluated plaintiff for the Social Security Administration. AR 1324. Plaintiff reported feeling depressed because of limitations resulting from his medical conditions with symptoms of a depressed mood, loss of interests, suicidal ideation, feelings of helplessness, distractibility, and fatigue. Id. A mental status examination revealed slightly impaired recent memory. AR 1326. Dr. Dixit diagnosed major depressive disorder with a GAF score of 60. AR 1327. Dr. Dixit opined plaintiff could perform simple and repetitive tasks, he was not significantly impaired in the ability to perform detailed and complex tasks, and that he should be able to work with supervisors, co-workers, and the public, and handle routine stressors. Id.

      d. Megan Stafford, Psy.D., SSA Consultative Psychologist

Dr. Stafford evaluated plaintiff at the request of the ALJ on September 20, 2018. AR 2843. Plaintiff endorsed a history of depression with decreased self-esteem, and memory deficits. Id. A mental status examination revealed a restricted affect, a "down" mood, a nervous appearance, memory deficits, and fair insight and judgment. AR 2846. Upon administration of the Wechsler Adult Intelligence Scale IV, plaintiff was found to have a full-scale IQ of 66. AR 2847. The results of the test were deemed "reliable." Id. Dr. Stafford diagnosed mild intellectual disability to borderline intellectual functioning and major depressive disorder, recurrent. AR 2847-2848. The psychologist opined plaintiff was "moderately impaired" in his ability to

(1) perform detailed and complex tasks; (2) perform work activities on a consistent basis without special or additional instructions; (3) complete a normal workday/workweek without interruptions from a psychiatric condition; and (4) deal with the usual stress encountered in the workplace. AR 2848. In addition, Dr. Stafford found plaintiff was unable to manage any benefits awarded to him due to his memory issues. Id.

e. Nicholas Nomicos, M.D., Treating Physician

Dr. Nomicos treated plaintiff for physical complaints. AR 1231-1240. He completed a check-the-box questionnaire dated August of 2014, in which he evaluated plaintiff's physical limitations. AR 1838-1839. With respect to plaintiff's mental health, Dr. Nomicos made a notation that plaintiff was seeing a psychologist/psychiatrist for medication and depression. AR 1838. In a 2010 letter to plaintiff's disability counsel, Dr. Nomicos wrote in relevant part "The patient's depression is mild, well controlled on his medication, and he has not demonstrated any evidence of psychosis." AR 1236.

2. Principles Governing the ALJ's Consideration of Medical Opinion Evidence

Under the standards applicable to this case, the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996).[6] "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).

"The general rule is that conflicts in the evidence are to be resolved by the Secretary and

---

[6] For applications filed on or after March 27, 2017, the Commissioner has eliminated this so-called treating source rule and special deference to treating sources. See 20 C.F.R. § 404.1520c; see also Purdy v. Berryhill, 887 F.3d 7, 13 n.8 (1st Cir. 2018) (summarizing new regulations). The changes are not applicable here because plaintiff's application was filed prior to March 27, 2017.

that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so.  Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

### 3. The ALJ Properly Weighed the Medical Opinions

The ALJ gave little weight to the medical opinion attributed to Dr. Collado and Mr. Pippin, finding that it was not supported by the "minimal symptoms and conservative treatment" documented in the record, that they were based on plaintiff's subjective statements rather than on clinical progress notes and observations, and were inconsistent with the record indicating plaintiff's condition was well controlled with medication, particularly noting a statement from Dr. Nomicos that stated plaintiff's depression was well controlled on medication. AR 367, 1231-1240.  The court finds the opinion of the ALJ to be sufficiently supported.

First, the court notes that as an L.M.F.T., Mr. Pippin is not an "acceptable medical source" and the ALJ needs only to provide germane reasons for rejecting his opinion. Britton v. Colvin, 787 F.3d 1011, 1013 (9th Cir. 2015) (per curiam).  Second, it is not at all clear that Dr. Collado – an accepted medical source – issued any opinion with respect to plaintiff because the opinion the ALJ attributed to Dr. Collado appears to have been written entirely by Mr. Pippin.  AR 367, 1339-1348.  Nonetheless, because the ALJ attributed the opinion to Dr. Collado, the court will treat the opinion as though it was from an accepted medical source for the purpose of this analysis.

The ALJ found that plaintiff's conservative, and perhaps more importantly, effective, treatment with medication detracted from Dr. Collado's opinion and Mr. Pippin's findings.  AR 367.  The record supports this conclusion.  See, e.g., AR 1270, 1274, 1278, 1281, 1288 ("med is helping esp with the depression.  He is sleeping better.  No c/o side effects"), 1292, 1302 ("he had

taken his meds and feels it is working as he feels less depressed"), 1310, 1381-1410).  Although plaintiff was briefly hospitalized after inconsistently taking his Cymbalta medication in 2012, he discharged as clinically stable and with a normal mental status exam.  AR 1693.  Overall, the evidence supports the ALJ's findings.  Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ provided adequate reasons for rejecting medical opinion by pointing out that claimant had been treated conservatively); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining disability benefits.")

Further, as noted above, Dr. Collado's limitations are expressly contradicted by the opinion of another treating physician, Dr. Nomicos, who wrote in a July 2010 letter that plaintiff's "depression is controlled with his current medication and he has shown no evidence of psychosis."  AR 1254.  Dr. Nomicos concluded that "Mr. Gordon's prognosis is good and there appears to be no reason that he would not do well with retraining" (AR 1254).  "When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ resolved the conflict in favor of Dr. Nomicos, a conclusion which is adequately supported, particularly considering Dr. Collado's questionable involvement with the issuance of the opinion attributed to him.  The court finds no error.

### B. The ALJ Did Not Err in Formulating the Hypotheticals Posed to the Vocational Expert

Plaintiff argues that the ALJ posed an improper hypothetical to the vocational expert because ALJ found plaintiff has "moderate" limitations in concentration, persistence, or pace, AR 358, but in the hypothetical posed to the VE at the hearing and in written interrogatories, the ALJ only restricted plaintiff mentally to jobs that are non-complex in nature and that require the performance of no more than simple, routine tasks.  AR 1153, 3254-3255.  Plaintiff argues that the limitation to simple, routine tasks does not encompass limitations reflecting moderate impairment in plaintiff's ability to maintain a pace over the course of a workday or workweek, concentrate over time, or persist at tasks, despite the ALJ's finding of moderate limitations in these areas of functioning.  ECF No. 12 at 27.  The court disagrees.

It is the ALJ's duty to translate the RFC finding into a statement of abilities, as it is impossible for a vocational expert to compare a descriptor such as "moderate" against the concrete demands of a job. Rounds v. Comm'r, 807 F.3d 996, 1006 (9th Cir. 2015), (citing Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174 (2008) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.")).  In Stubbs-Danielson, the State agency physician identified the claimant "as moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods." 539 F.3d at 1173. The Stubbs-Danielson court concluded that the ALJ properly "translated" that limitation into an RFC for simple tasks. 539 F.3d at 1174. The court finds no error in the ALJ's translation of plaintiff's concentration, persistence, and pace limitations into the questions posed to the vocational expert.

### C. The ALJ Properly Rejected Plaintiff's Subjective Testimony

The ALJ permissibly rejected plaintiff's subjective testimony regarding his pain and impairments. Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. Id. (internal citations omitted). Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." Id. (internal citations omitted). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Id. at 1016.

///

Plaintiff's argument is limited to his mental health symptoms, but he does not specifically identify the subjective testimony that is at issue. ECF No. 12 at 23-27. As to the mental health evidence overall, the ALJ's reasoning discussed above—that plaintiff's mental status examinations and treatment history supported limiting him to simple, repetitive tasks but not finding him disabled—equally supports the ALJ's findings regarding plaintiff's testimony. See 20 C.F.R. § 404.1529(c)(2) (objective medical evidence cannot be the sole basis for rejecting a claimant's statements regarding his or her symptoms, but it is a "useful indicator" of a claimant's pain and dysfunction), (c)(3)(iv)-(v) (considering medication and treatment in weighing symptoms); see also Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (affirming ALJ's reliance on normal mental status findings to reject claims of disabling mental symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (stating that evidence of conservative treatment may be "sufficient to discount a claimant's testimony regarding severity of an impairment"). Plaintiff's generalized argument does not convince the court otherwise. The court finds no error.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 13), is GRANTED; and

3. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: March 16, 2023.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE